IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

_____

| | |
|---|---|
| FRONTLINE PROCESSING CORP.,  ) | |
| ) | |
|       Plaintiff,  ) | |
| ) | CV 01-74-BU-RWA |
|   v.  ) | |
| ) | FINDINGS AND RECOMMENDATIONS |
| FIRST STATE BANK OF ELDORADO, ) | OF U.S. MAGISTRATE JUDGE |
| ELDORADO, ILLINOIS,  ) | AND ORDER |
| ) | |
|       Defendant.  ) | |

--------------------------

FIRST STATE BANK OF ELDORADO, )
                              )
      Counterclaim      )
      Plaintiff,        )
   v.                       )
                              )
FRONTLINE PROCESSING CORP.,   )
LMA UNDERWRITING AGENCY, INC.,)
and CHRISTOPHER L. KITTLER,   )
                              )
      Counterclaim      )
      Defendants.     )

Pending before the Court are Defendant and Counterclaim Plaintiff First State Bank of Eldorado's ("FSB's") (1) Motion for Summary Judgment to Dismiss the First Amended Complaint; and (2) Motion for Partial Summary Judgment on Counts VII-IX of the Counterclaim.  The United States Magistrate Judge has considered

the briefs and supporting materials submitted by the parties and, pursuant to 28 U.S.C. § 636 (b) (1) (B), recommends that the Court grant and deny the motions, as follows.

## I. BACKGROUND

In February of 1999, Plaintiff Frontline Processing Corp. ("Frontline") and FSB entered into a Merchant Program Processing Contract (the "Contract"), which provided for the settlement of credit card sales transactions through a merchant processing program.  Under the Contract, Frontline acted as an Independent Service Organization ("ISO"), to develop and market credit card programs for business merchants. Frontline did initial underwriting for merchants, and managed merchant accounts.  FSB, as an "acquiring bank," also performed underwriting, and provided a legal banking mechanism for settlement of merchant credit card accounts.

Several reserve accounts were established at FSB in connection with the Contract, including a $25,000.00 reserve account established by Frontline to fund potential losses under the Contract, pursuant to § 9.3 of the Contract.  By separate agreement, Frontline also established a reserve account for the benefit of one of its higher risk merchants, Wade Cook Financial Corporation ("Wade Cook").

The program basically ran smoothly and profitably until late 2000 and early 2001, when the FDIC conducted an unannounced examination of FSB's credit card program.  As a result of that inquiry, the FDIC pinpointed numerous deficiencies in FSB's credit card processing program.  As a result of the FDIC criticisms, FSB

2

terminated the Contract, pursuant to ¶ 12.2(c) of the Contract. Frontline then began the process of attempting to transfer its merchant accounts to another bank, and encountered some difficulty in doing so.  Frontline attributes this difficulty to inadequate termination notice given by FSB, and to disagreements concerning the release of reserve funds, indemnity, and other issues.

Frontline filed the present action asserting the following causes of action:

| | |
|---|---|
| Count I: | Breach of contract, arising out of FSB's alleged failure to adequately perform underwriting and administrative duties; |
| Count II: | Breach of Contract, arising out of FSB's alleged failure to pay full settlement under Section 6 of the Contract; |
| Count III: | Breach of Contract, arising out of FSB's alleged failure to pursue and collect bond payments from the Program bond carrier, Frontier Insurance; |
| Count IV: | Breach of Contract, arising out of FSB's alleged improper transfer of funds from the Wade Cook reserve account to an unauthorized new reserve account. |
| Count V: | Breach of Contract/Specific Performance, based upon FSB's alleged refusal to transfer Merchant reserve account balances, as required by the Contract; |
| Count VI: | Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing, arising primarily out of FSB's alleged conduct during the "winding down" process; |
| Count VII: | Tortious Interference, arising out of FSB's alleged interference with Frontline's contractual relations and business expectancies with Global/HBC and Frontline's merchant portfolio. |
| Count VIII: | Punitive Damages, arising out of FSB's alleged willful, purposeful and malicious attempts to |

obstruct,    hinder    and    interfere    with
Frontline's business.

Count IX:       Attorney's fees, based upon Section 14.14 of
the Contract.

The case was removed to federal court on October 23, 2001, and
extensive discovery and motions have been pursued by the parties
since that time.  FSB now moves for summary judgment in its favor
on each of the Counts of Frontline's First Amended Complaint, and
on three of its counterclaims, pursuant to Rule 56(c), Fed. R. Civ.
P..  The motions have been fully briefed and are now ready for
decision by the Court.

<u>DISCUSSION</u>

Summary judgment is properly granted under Rule 56(c) if "the
pleadings and supporting materials show that there is no genuine
issue as to any material fact and that the moving party is entitled
to judgment as a matter of law." <u>California Architectural Building
Prod., Inc. v. Franciscan Ceramics</u>, 818 F.2d 1466, 1468 (9th Cir.
1987).  In ruling on a motion for summary judgment, the Court must
view the evidence and draw all inferences in a light most favorable
to the nonmoving party.  <u>T.W. Electrical Services, Inc. v. Pacific
Electrical Contractors</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).  The
moving party must initially present to the Court the basis for its
motion, and must demonstrate the absence of any dispute over
material facts that would preclude summary judgment.  <u>Celotex v.
Catrett</u>, 477 U.S. 317, 323 (1986).  The burden then shifts to the
nonmoving party to show that specific facts remain at issue,
requiring their submission to a jury.  <u>Kaiser Cement Corp. v.</u>

4

<u>Fischbach & Moore</u>, 793 F.2d 1100, 1103-04 (9th Cir. 1986).  With those standards in mind, the Court turns to the merits of the pending motions.

    I.  <u>FSB'S Motion for Summary Judgment on Frontline's Claims</u>

        A.  <u>Count I</u>

In Count I of the Amended Complaint, Frontline asserts claims for breach of contract arising out of alleged failures by FSB to adequately perform underwriting and administrative duties under the contract.  Specifically, Frontline contends that FSB failed to draft and/or follow required Merchant Policies; failed to adequately underwrite each merchant application; failed to maintain credit files for each merchant; and otherwise failed to operate the Program as required in the Contract. Am. Compl., ¶ 83-94.  As a result of these various breaches of its contractual obligations, says Frontline, FSB was subject to criticism by the FDIC, which led to the Bank's speedy exit from the merchant processing business, which caused damages to Frontline.  Am. Compl., ¶ 95-99.

    In support of its motion, FSB disputes that it had any obligation to monitor risks of the program, under the Contract. FSB has presented the Court with  evidence to show that it did, in fact, perform its other underwriting and administrative obligations under the Contract.  In response to FSB's motion and Statement of Uncontroverted Facts ("SUF"), Frontline relies upon the FDIC investigation Report and the Memorandum of Understanding entered by the parties to argue that FSB generally failed to properly implement and supervise the operation its credit card processing

5

program; failed to have adequate capital protection for the high-risk merchants in the program; failed to properly train its personnel; and otherwise failed to comply with the Contract with Frontline. SGI, ¶ 12.  Frontline also relies upon portions of the FDIC Report stating that there were "numerous deficiencies, and undesirable and objectionable practices in the bank's management of its merchant credit card operations," and that "Management and the Board had failed to properly implement and subsequently supervise the merchant credit card processing area."  SGI ¶ 20.  Finally, Frontline relies upon the Memorandum of Understanding ("MOU") entered between FSB and the FDIC, which referred to "unsatisfactory practices and conditions referred to in the [FDIC] Report."  SGI ¶ 14.

After review of the materials submitted by both sides, the Court is not persuaded that summary judgment is appropriate on each and every one of Plaintiff's claims in Count I.  If even one of the claims survives summary judgment, then it is prudent, under the circumstances of Count I and given the somewhat interrelated nature of the administrative tasks at issue, to deny summary judgment on all the claims, on the issues of duty and breach.

However, during the course of considering FSB's motion for summary judgment, it has become apparent to the Court that the claims at Count I may not succeed for another reason.  Specifically, even assuming that the alleged breaches of underwriting and other administrative duties occurred, the Court cannot discern from the record, as it exists at this time, that

6

any damages to Frontline were proximately caused by these breaches. Frontline has stated that the program operated profitably for both Frontline and FSB.  Statement of Genuine Issues ("SGI") ¶ 10.  The Court is not aware of any evidence that any failure of FSB to draft adequate policies, to properly underwrite merchant applications, to maintain credit files, or the like, resulted in the acceptance of an unqualified merchant whose participation in the program caused Frontline to suffer damages, or that any other damages were caused by the alleged deficiencies.

Instead, Frontline complains that because of the asserted deficiencies, the FDIC criticized FSB's merchant processing operations.  Yet, the undisputed evidence shows that the FDIC investigation was precipitated by the failure of another bank in the area, and was not provoked or expected by FSB.  After the FDIC criticisms were made, FSB elected to terminate the Contract.  The Contract between FSB and Frontline expressly provided that such criticism by the FDIC constituted good cause for termination of the Contract, and FSB was  entitled to choose that course of action rather than revamp its credit card program to bring it into compliance.  Contract, ¶ 12.2(c).

Thus, even if it is true that the alleged breaches of contract caused the FDIC criticisms, it does not necessarily follow that they were the proximate cause of any damages to Frontline.  The claimed damages appear to have resulted from FSB's decision to terminate the contract after criticism by the FDIC; yet, if that decision was permissible under the Contract, any hardship or

damages resulting from that decision are not actionable under a breach of contract theory.

The Court believes that Count I may be susceptible to summary judgment on these grounds.  However, FSB did not move for summary judgment based on the absence of damages; its motion was based on the absence of duty and/or breach of duty[1].  The Court may not grant summary judgment sua sponte unless the party against whom judgment is entered is "given reasonable notice that the sufficiency of his or her claim will be in issue." O'Keefe v. Van Boening, 82 F.3d 322, 324 (9th Cir. 1996) (internal quotations omitted); see Verizon Delaware, Inc., v. Covad Communications Co., 377 F.3d 1081, 1092 (9th Cir. 2004).

The Court hereby advises Frontline that the sufficiency of the claims asserted at Count I is now at issue on the element of damages, on the Court's own motion. A briefing schedule will be established below, to give the parties an opportunity to address the issues prior to a ruling by the Court.

B.  Count II

At Count II, Frontline alleges that FSB wrongfully withheld certain amounts from income due and owing to Frontline, in violation of §6 of the Contract.  FSB, moving for summary judgment,

_____

[1]     In a earlier motion to dismiss, FSB raised §12.2(c) as a defense to the breach of contract claims in Count I.  The Court properly denied the motion, under standards applicable to such motions, and allowed Plaintiff to proceed on the underlying breach of contract claims.  The Court now considers the claims under summary judgment standards, which require Plaintiff to come forward with evidence of record in support of each disputed element of its claims.

contends that it has fully complied with ¶ 6.3 in making monthly settlement payments to Frontline, and that any deductions were contractually authorized or otherwise agreed to by Frontline. FSB argues that it is entitled to summary judgment because Frontline has not presented any evidence of improper settlement amounts.

During the course of this litigation, Frontline has repeatedly requested a detailed accounting of settlements concerning its reserve accounts at FSB. On October 11, 2002, the district court entered an order requiring FSB to "serve and file a detailed, itemized accounting setting forth all deposits, deductions, withdrawals, transfers and other transactions involving Frontline reserve accounts since the date the Contract was terminated in May, 2001, along with a citation to the express contractual authority for each transaction...." FSB has not fully complied with this Order. While FSB has dutifully filed regular accountings of reserve account transactions, the accountings have not contained citation to contractual authority for *each transaction*, as required. Instead, as a footnote to each accounting, FSB has provided a list of contract provisions, leaving Frontline and the Court to attempt to divine which particular provision FSB actually relied upon for each transaction.

By failing to provide the required contractual citation for *each* reserve account transaction, FSB has deprived Frontline of the opportunity to assess the propriety of each transaction, and has also failed to meet its burden as a movant for summary judgment, of showing that each transaction was contractually justified. Summary

judgment cannot be entered in favor of FSB on Count II at this time, and the undersigned recommends that it be denied.

C.   Count III

Frontline alleges that FSB breached the Contract by failing to adequately follow up on several claims made to the Program bond carrier, Frontier Insurance.  Frontline further alleges that

> [w]ithout Frontline's authorization or contractual right, the Bank transferred funds which Frontline had put into reserve for the benefit of Wade Cook to a reserve for the Frontier Bond Claims.

Am. Compl., ¶ 112.

FSB seeks summary judgment in its favor on Count III, arguing that any allegations of inadequate follow-up are "untrue," and that bond payments were not made because of unacceptable release requirements and Frontier's eventual insolvency.

Frontline, in opposition to FSB's motion, has set forth facts detailing the chronology of events surrounding the bond claims at issue.  These facts are sufficient to establish a genuine issue of material fact as to whether FSB's efforts in pursuing the claims were sufficiently diligent to meet its obligations under the cooperation clause of the Contract, requiring both Frontline and FSB to "take such action as the other may, from time to time, reasonably request in order that the purposes of this Contract will be fully accomplished..."  Contract, ¶ 9.6.  Moreover, FSB has not directed the Court's attention to any Contract provision entitling

it to withdraw funds from the Wade Cook Reserve and hold them as a reserve for unpaid Frontier bonds.  FSB's contention that Frontline agreed to this transfer is disputed by evidence of record.  Summary judgment on Count III is not appropriate at this time and should be denied.

        D.   <u>Count IV</u>

Frontline alleges that FSB breached the Contract by unilaterally transferring funds from the special Wade Cook reserve account to a new reserve account created by FSB, without notice or explanation to, or authorization from, Frontline.  Thereafter, alleges Frontline, FSB repeatedly refused Frontline's requests to restore the funds to the Wade Cook reserve account, and refused to release the funds to facilitate transfer of Frontline's accounts after FSB terminated the Contract.

FSB argues that the Court must look to the intent of the parties, which was to "ensure that the Bank's protection from loss was secured through indemnification, bonds and reserve accounts," in determining whether transfer of the Wade Cook funds was proper. FSB's Br. in Supp., pg. 11.  Given this intent, FSB asserts that it was entitled to transfer the Wade Cook Reserve into a general reserve, for its own protection.  However, this argument fails to consider the nature of the Wade Cook Reserve as a special reserve account, outside the parameters of the reserve account authorized under ¶ 9.3 of the Contract.  The Wade Cook Reserve was "[s]pecifically designated for losses and or uncollected

11

chargebacks [sic] associated with [Wade Cook Seminars, Inc.]"
Frontline Ex. 27.  The reserve was to be released to Frontline upon
the occurrence of certain events, one of which was "60 days after
the Merchant terminates bankcard processing through FSB." Id.  FSB
has not pointed to any provision of the Contract or the agreement
establishing the Wade Cook Reserve that authorized it to move funds
from the separate Wade Cook Reserve to a different reserve account
established for a completely different purpose, to suit its own
purposes.   As noted above, evidence of any purported agreement
between the parties to do so is disputed.  FSB has therefore not
established that it is entitled to judgment as a matter of law on
this claim, and summary judgment should be denied.

      E.   Count V

Frontline has advised the Court that it intends to voluntarily
dismiss Count V at the time of the final pretrial conference.  This
aspect of FSB's motion should therefore be granted, rather than
awaiting a later motion.

      F.   Count VI

At Count VI, Frontline alleges that FSB breached the Contract
by breaching the implied covenant of good faith and fair dealing.
Under Illinois law, which this Court has already determined applies
to Frontline's contract claims, see Mem. & Ord. dated March 4,
2002, "a party who does not properly exercise contractual
discretion breaches the implied covenant of good faith and fair
dealing that is in every contract." Mid-West Energy Consultants,

Inc. v. Covenant Home, Inc., 815 N.E.2d 911, 916 (Ill. App. 2d 2004) (citing Diamond v. United Food & Commercial Workers Union Local 881, 329 Ill.App.3d 519, 527, 263 Ill.Dec. 784, 768 N.E.2d 865, 871 (2002)). "Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised 'reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'" Id. (quoting Resolution Trust Corp. v. Holtzmani, 618 N.E. 2d 418, 424 (Ill. App. 1993).

Seeking summary judgment, FSB essentially contends that it does not possess the "broad discretion" necessary to find breach of the implied covenant of good faith and fair dealing, and that even if it did, FSB acted appropriately and not arbitrarily.

Responding to the motion, Frontline points out several instances in which it contends that FSB exercised and abused its discretion under the Contract. First, Frontline contends that FSB had discretion "on how it was to run its end of the Program" in terms of training, investment in the Program, underwriting and the like. However, as with Count I above, even assuming that this was the case, the Court is unaware of evidence showing that such breaches were the proximate cause of any damages to Frontline. The Court will require further briefing on the subject, after which the Court will determine whether to sua sponte enter summary judgment on the issue.

13

Next, Frontline contends that FSB abused its discretion by deciding to terminate the Program rather than remedy the deficiencies noted by the FDIC.  However, under Illinois law, "[t]he implied covenant of good faith and fair dealing does not require a party with discretion to forbear from exercising its right to terminate a contract for the benefit of the other party to the agreement. Parties are entitled to enforce the terms of their negotiated contracts to the letter without being mulcted for lack of good faith." Id. (citing Resolution Trust Corp., 618 N.E. 2d at 424).  FSB is entitled to summary judgment on this aspect of Frontline's cause of action for breach of the implied covenant of good faith and fair dealing.

As to the other conduct alleged by Frontline to have violated the implied covenant of good faith and fair dealing, such as FSB's conduct during the "winding down" and transfer process and its handling of the Wade Cook and other reserve funds, the Court finds that genuine issues of material fact preclude summary judgment at this time.

G.   Count VII

In Count VII of the Amended Complaint, Frontline alleges that FSB tortiously interfered with its contractual relationships and business expectancies, by thwarting or hindering a BIN[2] transfer of

_____

[2]    A BIN is a "bank identification number," which is issued to an ISO by an acquiring bank as a means of identifying the ISO's group of merchants.  More than one ISO may share a BIN; however, Frontline's BIN was not shared.  A BIN transfer occurs when all merchants in the BIN are transferred in bulk to a new

Frontline's merchant portfolio to Global/HSBC.  FSB seeks summary judgment, arguing that the elements of a reasonable business expectancy, intentional interference with that expectation, and damages, have not been shown.  See Pospisil v. First National Bank of Levittown, 37 P.3d 704, 706 (Mont. 2001);  E. J. McKernan Co. v. Gregory, 623 N.E 2d 981, 995 (1993).  According to FSB, Frontline had a "mere hope," not an expectancy, that Global would accept its BIN transfer; the failure of the BIN transfer was attributable to Global's own business decision and not any conduct by FSB; and there is no evidence of intentional, wrongful conduct by FSB.

To the extent that Frontline's claims are based on FSB's conduct in deciding to exit the credit card processing business rather than bring its program into compliance with FDIC criticisms, the claims fail because FSB was contractually entitled to do so. Likewise, to the extent that Frontline's claims are based on time constraints placed upon it by FSB's decision to terminate the Contract, Frontline is bound by the provisions of the Contract, which provided for 30 days notice in case of termination under ¶ 12.2(c).

However, to the extent that Frontline's tortious interference claim is based upon other conduct, such as FSB's alleged withholding of monies due Frontline, the Court finds that disputed factual issues preclude summary judgment in FSB's favor.

---

bank, as opposed to an account-by-account transfer of merchant accounts.

As a final ground for summary judgment on Count VII, FSB argues that Frontline did not suffer damages as a result of any alleged tortious interference.  Specifically, FSB argues that the failure of the BIN transfer resulted not from its conduct, but from Global's determination that a BIN transfer would be too expensive.  In response, Frontline directs the Court to evidence showing that, with FSB's cooperation, Global "would" have been able to accommodate a BIN transfer.  See SGI ¶ 39.  Frontline also argues that it suffered damages due to loss of merchants and resulting damage to its portfolio, not just due to the failure of a BIN transfer to Global.  The evidence is sufficient to avoid summary judgment and preserve the issue of damages for trial.

    8.  Count VIII

Frontline seeks punitive damages in connection with FSB's conduct in hindering the BIN transfer of Merchant Accounts to HSBC.  This same conduct is the basis of Frontline's tort cause of action for intentional interference with a business expectancy, set forth at Count VII of the Amended Complaint.

FSB seeks summary judgment on the issue of punitive damages, contending that there is no evidence of fraud or malice.  However, Frontline has presented evidence of possible fraud with regard to the withholding of excess reserves; evidence that FSB may have tried to extort a release from liability in exchange for the partial release of reserves; and evidence of a desire on the part of FSB decisionmakers to "destroy Chris Kittler."   This evidence

16

is sufficient to preserve the issue of punitive damages, in the event Plaintiff prevails on his tort claim at Count VII. Summary judgment should be denied.

      I.  <u>Count IX</u>

    Frontline seeks an award of attorneys' fees pursuant to §14.14 of the Contract, which provides that in any action arising under the Contract, or to enforce the Contract, "the prevailing party shall be entitled to recover from the other party its reasonable attorneys' fees and expenses in addition to the cost of any such action."  Contract, § 14.14.   FSB seeks summary judgment in its favor on the issue of attorneys' fees.  Since summary judgment is properly denied on a number of Frontline's claims, it must be denied on the attorney fee issue as well, pending the outcome of the trial.

      II.  <u>FSB's Motion for Summary Judgment on Counterclaim Counts VII-IX</u>

        A.  <u>Counterclaim Counts VII and VIII</u>

    FSB seeks summary judgment in its favor on its alternative claims for indemnity under Counts VII and VIII of its Amended Counterclaims.   Count VII invokes ¶6.6 of the Contract and Count VIII invokes ¶ 16 of the Contract.  Both Counts involve indemnification for the same alleged chargeback losses, and seek payment of the asserted indemnity obligations out of the Transfer Account established under §6.2 of the Contract and funded, at least in part, by sums formerly held in the Wade Cook Reserve.

FSB's request for declaratory relief is extremely broad, seeking a declaration that it is entitled to indemnity "for 100% of any losses to the Bank caused by the Unpaid Frontier Claims and the Bank's participation in the Program." Am. Counterclaims, ¶¶ 146, 153. Assuming for purposes of this motion only that Frontline is liable under the Contract to indemnify FSB for the amounts claimed, summary judgment is still inappropriate due to a genuine and very material dispute over FSB's right or authority to transfer Wade Cook Reserve monies into another general reserve fund, and from there into the Transfer Account. While FSB may indeed have had a contractual right to insist that Frontline increase the balance in the reserve account established under § 9.3 of the Contract, as it argues on page 11 of its opening  brief, it has cited to no contractual provision entitling it to unilaterally do so by withdrawing funds from other reserves, and particularly the separate Wade Cook Reserve. The evidence is conflicting on whether there was any agreement or consent by Frontline to move a portion of the Wade Cook Reserve and create a reserve for other purposes. Summary judgment must be denied on both Counts VII and VIII of FSB's Amended Counterclaims because FSB has failed to demonstrate its entitlement to judgment as a matter of law, based on undisputed facts of record.

    B.  Counterclaim Count IX

    At Count IX of its Amended Counterclaims, FSB asserts numerous claims for fraudulent misrepresentation.  The motion for summary judgment concerns only its claim based on Frontline's alleged

conduct in providing FSB with fraudulent and/or forged financial documents on three different occasions.

To prove fraudulent misrepresentation, FSB must show: (1) a representation; (2)the falsity of the representation; (3) the materiality of the representation; (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) the speaker's intent it should be relied upon; (6)the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by the reliance on the representation. <u>Lee v. Armstrong</u>, 798 P.2d 84, 87(Mont. 1990); <u>see</u> <u>D.S.A. Finance Corp. v. County of Cook</u>, 801 N.E.2d 1075, 1080 (Ill. App. 2003) (describing essentially the same elements under Illinois law). Frontline does not dispute that the financial information provided to FSB was false. However, Frontline disputes that the other elements of a claim for fraud are met.

With respect to the balance sheet dated December 31, 1999, and provided to FSB on April, 13, 2000, Frontline correctly notes that this was after the Contract had already been entered by the parties. A jury could therefore find that the false statements could not have, and did not, induce FSB to enter into the contract. Moreover, it does not necessarily follow that just because the statement was false, it was materially misleading to FSB. Frontline has submitted evidence to show that the 1999 balance sheet actually understated assets and created a less

19

favorable portrait of Frontline's finances than actually existed. Affidavit of Mike Conn, ¶ 4, Frontline Ex. 44.   A jury must determine whether the misrepresentations were material, and whether FSB was damaged by any reliance it may have placed upon them.

As to the false statements provided to FSB in February and July of 2001, Frontline correctly points out that FSB terminated the contract in March of 2001, and a jury could therefore reasonably find that those statements, made just prior to and after FSB terminated the Contract, did not wrongfully induce FSB to enter into or continue in the contractual relationship. Moreover, it appears that the primary misrepresentation in the February, 2001, statement was inclusion of Diamond E Ranch assets and liabilities in the Frontline balance sheet.   However, Frontline has presented evidence from which a jury could find that FSB already knew that Kittler, not Frontline, owned the ranch.   Frontline Ex. 53, 54 & 55. As to other misrepresentations in the 2001 statements, FSB has not shown, as a matter of undisputed fact, that the misrepresentations were material or that it relied upon them.

A jury could find that all the elements of a cause of action for fraud were not met with respect to any of the three false financial statements provided to FSB by Frontline.   FSB's motion for summary judgment is properly denied on Count IX of FSB's Amended Counterclaims.

20

III. <u>FSB's Motion to Strike Kittler Affidavit and Portions of Frontline's Statement of Genuine Isuses</u>

FSB has moved to strike Christopher L. Kittler's affidavit in its entirety, and portions of Frontline's SGI, on numerous grounds.  Most of the objections to the SGI raise challenges to the accuracy, context, or completeness of Frontline's citations to the record.  The full record is available to the Court, and the Court is capable of resolving such discrepancies without resorting to the drastic remedy of striking portions of the SGI and removing the evidence from consideration.  To the extent that the motions to strike raise other objections, the Court has not relied upon the disputed materials in ruling on the pending motions. Evidentiary rulings will be deferred until the time of trial.  For these reasons, both of FSB's motions to strike are denied.

<u>RECOMMENDATION</u>

For the foregoing reasons, and pursuant to 28 U.S.C. § 636 (b) (1) (B), the undersigned recommends that:

1. First State Bank of Eldorado's Motion for Summary Judgment on the Amended Complaint (Doc. #305)be GRANTED and DENIED as set forth above; and

2.  First State Bank of Eldorado's Motion for Partial Summary Judgment on Counts VII-IX of the Counterclaim (Doc. #306) be DENIED.

The parties shall have ten days from the date of service of

21

these Findings and Recommendation in which to file objections
pursuant to 28 U.S.C. § 636 (b) (1) and Rule 72(b), Fed. R. Civ.
P..

IT IS FURTHER ORDERED THAT:

1.  First State Bank of Eldorado's Motions to Strike (Docs.
#356 & # 357) are DENIED.

2.  On or before December 16, 2005, Frontline shall file a
brief on the issue of damages resulting from the breaches of
contract alleged at Counts I and VI, as discussed above, along
with citation to the record for all facts relied upon in support
of its claim for damages.  FSB shall file a response brief within
20 days thereafter, at which time the Court will deem the matter
fully briefed and ready for decision.

The Clerk is directed to forthwith notify counsel of record
of the making of this Order.

Done and dated this 29th day of November, 2005.

                              /s/ Richard W. Anderson
                              Richard W. Anderson
                              United States Magistrate Judge